PIEPER et al. v. ELECTRO DENTAL MFG. CO.

(Circuit Court, S. D. New York.   September 26, 1907.)

PATENTS—INVENTION—REGULATOR FOR ELECTRIC MOTORS.

The Pieper patents, No. 704,099 and No. 721,229, for improvements in electric-motor regulation, are void for lack of invention, the only novel feature being a permanent shunt around the armature in an alternating current motor to control the motor at any speed and maintain a uniform speed, which device had previously been used in direct current motors, and the transfer from one class to the other not involving invention. The second patent is also void for anticipation by the first.

In Equity.   On final hearing.

Frederick F. Church, for complainants.

Howson & Howson (Charles Howson, of counsel), for defendants.

HOLT, District Judge. This suit is brought to restrain the alleged infringement of two United States letters patent granted to the complainants, No. 704,099, issued July 8, 1902, and No. 721,229, issued February 24, 1903, for alleged improvements in electric-motor regulation. The defenses alleged are invalidity of the complainants' patents and noninfringement.

I think that the complainants' second patent is clearly invalid because anticipated by the first patent. The only difference between the

two patents is that a resistance coil in the shunt is, in the later patent, an inductive coil, and in the former patent it is not. The coils in the shunts of both patents cause a resistance to the electric current; but the coil in the first patent causes only the natural or ohmic resistance, due to the size and conducting power of the wire; while the coil in the second patent, in addition to such natural resistance, creates a resistance due to the counter electromotive force induced within the coil by its particular construction or arrangement. These two kinds of resistance coils in a shunt were well known in the art before the complainants' patents were issued. The inductive resistance coil is a mere substitute or equivalent for the ohmic resistance coil. The second patent, therefore, in my opinion, involved no invention over the first patent, and was anticipated by it, aside from any question whether both patents were anticipated by previous patents or publications.

The general statement in the first patent of the invention is as follows:

"The invention, which is designed more particularly for small motors intended for operating dental engines or machines where accurate speed regulation is the leading requisite, relates to alternating-current motors of the direct-current type having the usual laminated field-magnets and the windings designed for a relatively high electromotive force or relatively high self-induction, armature-coils designed for a relatively low electromotive force or having a relatively low self-induction, commutator and commutator-brushes arranged at the neutral point, said field and armature windings being connected in series; and the novel features of the invention relate to the control of such motors at any speed and with or without a load by a permanent shunt around the armature, and the accurate regulation of the motor is accomplished by the manipulation of a variable resistance interposed in said shunt."

This statement, in my opinion, is an admission by the patentees that such an arrangement of the alternating current motor as is described was usual, and that the only novel features claimed for the invention related to the control of the motor at any speed and with or without a load by a permanent shunt around the armature, and the accurate regulation of the motor by the manipulation of a variable resistance interposed in the shunt. Prof. Kennelly, the complainants' expert, regards, in this quotation from the patent, the word "usual" as qualifying alone the words "laminated field magnets," and not the succeeding clause. I understand his view to be that alternating current motors did not at that time usually have field windings designed for a relatively high electromotive force and armature coils designed for a relatively low electromotive force, and I infer that Prof. Kennelly holds that the arrangement in an alternating current motor of field windings designed for a high electromotive force and armature coils designed for a low electromotive force was a part of the invention. But, in the first place, no claim is made for such an invention in the patent. In the second place, the evidence shows that, while large alternating current motors were not usually so constructed, small alternating current motors were then made and in common use principally for driving electric fans, in which the field windings developed a high electromotive force and the armature windings a low electromotive force. I think, therefore, that the entire construction of a small alternating current motor as described in the specification was usual, and that the natural grammatical

construction of the language used shows that the only novelty claimed by the patentee was the regulating device. The language of the claims also supports this view. The first claim, for instance, is as follows:

"1. The combination, in a motor for alternating currents, of field-windings, armature-coils, commutator and commutator-brushes arranged at the neutral point, all connected in series, as customary in constant-current motors, and a regulating device for controlling the speed of the motor consisting of a variable resistance permanently in shunt across the armature."

This language shows, I think, that all the combination mentioned before the clause "as customary in constant-current motors" was admittedly old, and that the invention claimed related only to the regulating device. The other claims are similarly drawn, and all suggest a similar conclusion. The question, therefore, is whether invention was involved in applying to a usual form of alternating current motor described in the patent the regulating device of a permanent shunt around the armature described in the patent.

The evidence shows that electric motors of the precise style of construction described in the patent, except that they were direct instead of alternating current motors, regulated by a permanent shunt around the armature, of the same kind as described in the patent, were well known and in common use before the complainants' patent was applied for. The patents to Thomson, Davidson, Johnson Brown, and Davidson, and Richardson were all such patents. The patent to Johnson Brown and Davidson was stated in the specification to be for a dental motor. The patents to Davidson and Richardson were obviously intended particularly for dental motors; and their original issue to the S. S. White Dental Manufacturing Company as assignee indicates such intended use. All these patents are for motors of the direct current type, but in all other respects are like the motor described in the complainants' patent. They have, as described in claim 1, field windings, armature coils, commutator, and commutator brushes arranged at the neutral point, all connected in series, as customary in constant current motors, and a regulating device for controlling the speed of the motor consisting of a variable resistance permanently in shunt across the armature. They equally fill the requirements of the other claims, except that they are direct instead of alternating current motors. Moreover, alternating current motors and controllers or regulating devices similar to those described in the complainants' patent existed and were in common use before the complainants applied for their patent. The Westinghouse motor, the Novelty motor, and the Stanley motor were all small alternating current motors of the direct current type, having field windings designed for relatively high electromotive force, and armature coils designed for relatively low electromotive force, a commutator and commutator brushes arranged at the neutral point, and all connected in series, as customary in direct currents. The Garhart patent shows a controller or regulating device similar to that shown in the Thomson patent, and in the complainants' patent, and at all times after July, 1898, direct current electric dental engines provided with the Garhart controller were made and sold and in public use in the United States. The simple question in this case, therefore, is whether invention was shown by applying a regulating device formerly used on a direct current mo-

tor to an alternating current motor, precisely similar, except that an alternating, instead of a direct, current was employed; or by applying to an alternating current motor, such as the Westinghouse, Novelty, or Stanley motor, a regulating device like the Garhart controller, which had long been used to regulate similar direct current motors. I cannot see that it was.

The sole claim for invention made by the complainants' expert and counsel is that alternating currents are so different in their inherent nature from direct currents that apparatus and processes applicable to one are not necessarily applicable to the other. Undoubtedly, in many important respects, alternating currents differ from direct currents, and require different arrangements and machinery; but the evidence shows that in many respects they also produce the same results and can be used with similar appliances. Direct currents were used commercially some years before alternating currents, and direct current appliances were therefore generally perfected first; but there is nothing in the evidence to show that, when alternating currents came into general use, an electrician, called upon to devise a regulating device for an alternating current dental motor, would have any reason to suppose that the usual regulating device used on direct current motors would not work on an alternating current motor. Undoubtedly he might have suspected that it might not. The action of alternating currents is, in some respects, peculiar and complicated. But as, in many respects, they produce the same results in operation as direct currents, it seems to me that the first suggestion which would arise in any mind, in devising appliances to use with them, would be to try appliances which had succeeded with direct currents, unless there was some obvious objection to doing so. In short, I think no invention was involved in using the same regulating device on an alternating current motor which had been successfully used on a direct current motor of substantially similar construction, and that there was no invention involved in attaching to such an alternating current motor as that used to drive the Westinghouse fan such a regulating device as the Garhart controller. I think, therefore, that the complainants' patents are invalid for want of invention.

This was the original view of the examiner in the Patent Office. The application was twice rejected on the ground, as stated on the first rejection, that "it involved no invention to merely operate the motors of Davidson, Richardson, and Garhart by means of alternating instead of direct currents." The applicants finally amended their specification by adding before the claims the following:

"The function of the resistance in shunt with the armature of a series-wound motor of the direct-current type, which is wound, as stated, for alternating currents, is not only to maintain the voltage at the armature-terminals constant, but permits an armature-winding of relatively low self-induction or few turns, which is necessary in an alternating-current motor of this type to prevent excessive sparking."

After this amendment the patent was allowed. I think, from the evidence, that the statements contained in the amendment were incorrect, and, in any event, I cannot see how its insertion in the specification changed the fact that it involved no invention to operate a motor by

means of an alternating instead of a direct current, when the motor is of a kind which will operate in the same way with either kind of current.

The conclusion that the complainants' patents are invalid for want of invention makes it unnecessary to pass upon the subtle and difficult question whether the operation of the regulating device in the defendant's motors is so substantially identical with that shown in the complainants' patents that, if those patents were valid, it would infringe.

My conclusion is that the complainants' bill should be dismissed, with costs.